**Ilo Marie GRUNDBERG, individually and Janice Gray, as personal representative of the Estate of Mildred Lucille Coats, Deceased, Plaintiffs,**

v.

**The UPJOHN COMPANY, a corporation, Defendant.**

**Civ. No. C–89–274G.**

United States District Court, D. Utah, C.D.

Oct. 4, 1991.

C. Neal Pope, Wade H. Tomlinson, Pope, Kellog, McGlamry, Kilpatrick & Morrison, Atlanta, Ga., H. Ross Workman, Thomas R. Vuksinick, Workman, Nydegger & Jensen, Salt Lake City, Utah, Gary W. Pendleton, St. George, Utah, for plaintiffs.

Lane D. Bauer, Shook, Hardy & Bacon, Kansas City, Kan., Thomas L. Kay, Merlin O. Baker, Salt Lake City, Utah, for defendant.

Michael D. Mosher, Law Offices of Michael Mosher, Dallas, Tex., Dennis Piercey, Salt Lake City, Utah, Jackson Howard, Howard, Lewis & Petersen, Provo, Utah, Cornish F. Hitchcock and Priscilla Budeiri, Public Citizen, Washington, D.C., Charles W. Gordon, Jr., Smith, Gill, Fisher & Butts, P.C., Kansas City, Mo., for intervenor.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on for expedited hearing on September 23, 1991, on motions of non parties to intervene, to modify an existing protective order and various other motions aimed at gaining access to documents and other materials which had been produced in pre-trial discovery and lodged with the court under seal prior to dismissal of the underlying action. The non parties who brought the motions, all proposed intervenors, were represented as follows:

Michael D. Mosher of Dallas, Texas and H. Dennis Piercey of Moyle and Draper, Salt Lake City, Utah represented intervenor William R. Freeman; Cornish F. Hitchcock and Priscilla Budeiri, of Washington, D.C. and Jackson Howard and D. David Lambert of Howard, Lewis & Peterson, Provo, Utah, represented intervenor Public Citizen; Charles W. Gordon, Jr. of Smith, Gill, Fisher & Butts, Kansas City, Missouri and Jackson Howard and D. David Lambert of Howard, Lewis & Peterson, Provo, Utah, represented intervenor Nila Wacaser. Plaintiffs were represented by Steven W. Saccoccia and Paul Kilpatrick, Jr. of Pope, McGlamry, Kilpatrick and Morrison, Atlanta, Georgia; and defendant The Upjohn Company was represented by Lane Bauer and Robert J. McCully of Shook, Hardy & Bacon, Kansas City, Missouri and Thomas L. Kay and Steven J. Aeschbacher of Ray, Quinney & Nebeker, Salt Lake City, Utah.

All parties and non parties filed memorandums of law and other materials, and the court heard extensive oral argument by all counsel. The matter was submitted for decision and taken under advisement.

## BACKGROUND

In 1989 this Court approved a Protective Order which had been entered by the Magistrate Judge upon stipulation of the parties in this now dismissed litigation.[1] This was in the nature of a "blanket" protective

1. Among other things, that order provided:

4. ... Any information which is designated confidential shall be immediately and at

order in which the parties agreed that all documents produced pursuant thereto would be regarded as "confidential and restricted," subject to the terms of the order. For purposes relevant to matters now before the court, the documents and materials covered by the protective order are of two types: (1) documents and items which had been lodged with the court under seal but which were returned to the custody of the parties by court order after dismissal; and (2) documents and items which have remained in the possession of the parties and have not been lodged with the court, although some of these likely would have been filed with the court if there had been a trial. On June 14, 1991, this court modified the protective order in certain respects.[2]

On August 5, 1991, based upon a voluntary and unconditional stipulation for dismissal by the parties, the court dismissed the action. On August 11, 1991, the court authorized return to the parties of documents, exhibits and items submitted under seal pursuant to the protective order which the parties deposited with the court. The court did not enter a so-called "sealing order," but the pre-existing protective order was left in full force and effect. Thereafter, pursuant to the August 11 order, the parties retrieved from the clerk of the court the sealed documents which had been filed. The last of the sealed documents were returned to counsel during the morning of August 26, 1991. Accordingly, the parties to the now dismissed action have possession and custody of the documents and items which had been lodged with the court under seal, as well as all other discovery materials which are covered by the protective order. Upjohn has

---

all times hereafter *maintained and kept confidential, as subject to this protective order,* unless confidentiality shall be removed as herein provided.

* * * * * *

6. ... The original documents and materials produced under the terms of this Order shall remain in the *custody and control of the producing party at all times.*

* * * * * *

7. All documents and materials, and copies of documents and materials subject to this protective order shall be *returned and surrendered to the producing party or person upon the conclusion of this case....*

This order shall *remain in full force and effect* and each person subject to this order shall continue to be *subject to the jurisdiction of this court,* for the purposes of this order, *in perpetuity,* and the court shall not be divested of jurisdiction of *any person or of the subject matter* of this order by the occurrence of conclusion of this case or any related cases, or by the filing of a notice of appeal, or other pleading which would have the effect of divesting this court of jurisdiction of this matter generally.

All *counsel shall at all times keep secure all notes, abstractions or other work product* derived from or containing confidential information, shall be obligated to maintain the confidentiality of such work product, and shall not disclose or reveal the contents of said notes, abstractions, or other work prod-

uct after the documents and information are returned and surrendered.

* * * * * *

9. *All portions of deposition transcripts that relate to information protected by this protective order shall be kept confidential.* Such portions shall be separately transcribed and, if filed under seal, *shall not be made part of the public record.* In the event that any *protected material* is offered as an attachment to a document, then such document shall be filed under seal and *shall not become part of the public record.* If any protected document is to be offered into evidence, the party asserting confidentiality shall so notify the court and the court will then consider what steps, if any, should be taken to protect the confidential information....

Protective Order of October 4, 1989 (emphasis added).

2. The court unconditionally released previously published articles from the protective order. As to documents which were lodged or filed under seal, the court determined that such would be released from restrictions under the protective order only at such time as they were admitted into evidence at trial, or otherwise used at trial with permission of the court. In the meantime, such documents were not to be disseminated or made accessible to the public. The court did not address what would be done with documents covered by the protective order but which may not have been admitted into evidence or otherwise used at trial. *Grundberg v. Upjohn,* 137 F.R.D. 372 (D.Utah 1991).

possession of most of the original documents, including the testing and clinical studies of Halcion.

In the afternoon of August 26, 1991, motions were filed in this action on behalf of William R. Freeman as a proposed intervenor. Freeman is a plaintiff in a pending products liability suit against Upjohn in a state court in Texas. On August 29, 1991, motions were filed in this action on behalf of an organization styled as Public Citizen,[3] also a proposed intervenor. On September 11, 1991, motions were filed in this action on behalf of Nila Wacaser, another proposed intervenor who is the defendant in a criminal case pending in Missouri.[4]

The motions presented by non parties in this action, which has been dismissed absolutely and unconditionally, seek access to documents, materials and items which were produced and assembled in the pre-trial discovery process. These items were returned to and are now in the possession of the Upjohn Company and the plaintiffs in this litigation with the approval of this court.

This matter presents considerations similar to the classic problem long ago confronted by the Supreme Court in *E.I. Du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917). In that case Justice Holmes noted that the trial judge has great discretion "to determine whether, to whom, and under what precautions," public access to trade secrets or other similar confidential information should be permitted in the trial context. *Id.* at 103, 37 S.Ct. at 576. The court will address the motions of the non parties and the considerations which govern the decisions here made.

## ANALYSIS

### I. INTERVENTION BY NON PARTIES IN DISMISSED ACTION FOR PURPOSE OF GAINING ACCESS TO DOCUMENTS AND ITEMS COVERED BY A PROTECTIVE ORDER

■ Where the parties voluntarily and unconditionally stipulate to dismissal of an action, the Tenth Circuit Court of Appeals has stated that dismissal is mandatory. In this regard, the court in *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir.1989) said:

> A voluntary dismissal by stipulation under Rule 41(a)(1)(ii) is of right, cannot be conditioned by the court, and does not call for the exercise of any discretion on the part of the court.

The Tenth Circuit also has ruled that when permissive intervention is sought for the sole purpose of modifying a protective order, the district court has jurisdiction for that limited purpose even though the main action has been dismissed. *United Nuclear v. Cranford Insurance Co.*, 905 F.2d 1424, 1428 (10th Cir.1990). However, in *United Nuclear* the court defined limits to the exercise of such jurisdiction, and precluded the district court from imposing affirmative discovery requirements on the parties or issuing discovery orders applicable only in collateral litigation.[5]

---

3. Public Citizen, a consumer group, is a nonprofit District of Columbia corporation with over 100,000 numbers nationwide. There is no action pending in any jurisdiction by Public Citizen against Upjohn concerning Halcion.

4. Nila Wacaser is charged with the crime of murder for the death of her two sons. The alleged effects of Halcion upon her behavior is a part of her defense.

5. The court said:

> [W]e also should note the limits of the district court's continuing jurisdiction over this matter. The district court was within its power and discretion to modify the protective order, but because the underlying controversy

was no longer alive, *"the court simply lacked power to impose any new, affirmative requirements on the parties relating to discovery."* *Public Citizen* [*v. Liggett Group, Inc.*], 858 F.2d [775] at 781 [ (1st Cir.1988) ]; *cf. Smith v. Phillips*, 881 F.2d 902, 905 (10th Cir.1989) (district court had no power to order the parties to disclose the terms of settlement agreement resulting in stipulated dismissal, when the settlement was not of record or subject to any court order).

In any event, *the district court must refrain from issuing discovery orders applicable only to collateral litigation.* "[F]ederal civil discovery may not be used merely to subvert limitations on discovery in another proceeding.... [and] a *collateral litigant has no right*

In *United Nuclear,* the Tenth Circuit also ruled that "permissive intervention is a matter within the sound discretion of the district court," and that at least some nexus must exist between the two suits in the case of collateral litigation. *Id.* at 1427.

## II. MODIFICATION OF PROTECTIVE ORDERS IN DISMISSED ACTION UPON MOTION OF NON PARTIES

■ The Tenth Circuit, in *United Nuclear* and other cases, has made it clear that the district court in its discretion has the power to modify protective orders which continue to be in effect:

> As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed. (Cit. omitted). And modification of a protective order, like its original entry, is left to the discretion of the district court. *See Wyeth Laboratories v. United States District Court,* 851 F.2d 321, 323 (10th Cir.1988).

*United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990).

■ Where, as here, the case involves materials and information which are restricted from public access, such as materials produced under a protective order and lodged with the court under seal, it is necessary to weigh the rights of the private party litigants who produced such materials and the reasons and policies for such restrictions against the interests of collateral and other litigants in disclosure of such materials. The standard for modification of protective orders as set forth by the Seventh Circuit in *Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1299 (7th Cir. 1980), was adopted by the Tenth Circuit in *United Nuclear,* as follows:

> [W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's

discovery, such modification can be denied only where it would *tangibly prejudice substantial rights of the party opposing modification.* Once such prejudice is demonstrated, however, the district court has broad discretion in judging *whether that injury outweighs the benefits of any possible modification of the protective order.*

*United Nuclear,* 905 F.2d at 1428 (emphasis added).

## III. BALANCING INTERESTS IN DETERMINATION OF MODIFICATION OF SUCH PROTECTIVE ORDERS

■ Prior to balancing the interests of the parties under the standard articulated by the Tenth Circuit and other courts, it must first be determined whether the parties to the now dismissed litigation have demonstrated that they would suffer prejudice if the protective order were modified. In this case, the parties have demonstrated that they would be prejudiced if the protective order were modified so as to permit public access to the discovery materials. In this regard, the court finds that plaintiffs acquired and maintain a right of privacy as to the discovery documents involving personal histories and medical records, including all documents relating thereto or having any connection therewith, as well as a property interest in all documents and discovery in their possession which were discovered at great expense to those plaintiffs. Production of such discovery documents could violate plaintiffs' rights to due process of law and may constitute a taking of private property for public use without just compensation. Documents which in any way relate to plaintiffs' privacy would have to be removed or redacted from the mass of documents. Plaintiffs represent this would be burdensome, costly

---

*to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." Wilk,* 635 F.2d at 1300. While the district court here properly granted collateral litigants access to discovery under its protec-

tive order, "[q]uestions of the discoverability in the [collateral] litigation of the materials discovered in [this] litigation are, of course, for the [collateral] courts." *Superior Oil Co. v. American Petrofina Co.,* 785 F.2d 130, 130 (5th Cir.1986). *Id.* at 1428 (Emphasis added).

and oppressive.[6]

Upjohn likewise claims confidentiality and property interests, as well as great expense incurred in connection with the documents. In addition, Upjohn maintains that certain executive summaries, technical reports and statistical reports contain information used in Upjohn's business which gives it certain competitive advantages over those who do not have the documents, and this court has recognized that some of the documents may contain trade secrets, confidential research, development, or commercial information.[7]

After determining that the original parties have demonstrated prejudice to substantial rights, the court must strike a balance in order to determine whether the prejudice and injury outweighs the benefits of possible modification of the protective order. The following considerations have particular relevance in striking such a balance in this case.

*Where Discovery Documents and Materials Are Submitted to the Court Under Seal, There is no Presumption in Favor of Public Access*

The Seventh Circuit has stated that although the common law right of access creates a strong presumption in favor of public access to materials submitted as evidence in open court, this *"presumption should not apply to materials properly submitted to the court under seal." U.S. v. Corbitt,* 879 F.2d 224, 228 (7th Cir.1989) (emphasis added) (*citing Times Mirror Co. v. U.S.,* 873 F.2d 1210, 1219 (9th Cir.1989)) ("there is no right of access to documents which have traditionally been kept secret for important policy reasons"). The *Corbitt* court also stated, "Where the judicial records are confidential, the party seeking disclosure may not rely on presumptions, but must instead make a specific showing of need for access" to the records. *Corbitt,* 879 F.2d at 228. Similarly, the Eleventh Circuit recently held that a party had no right to examine discovery materials where such were designated confidential by the producing party and protected from disclosure by court order. *In re Alexander Grant & Co. Litigation,* 820 F.2d 352, 355 (11th Cir.1987). The *Alexander Grant* court stated that the parties' right of access *"does not extend to information collected through discovery which is not a matter of public record."* Emphasis added. *See also Anderson v. Cryovac,* 805 F.2d 1, 13 (1st Cir.1986) (presumption that public may inspect judicial records does not extend to materials used only in discovery).

---

6. The Grundberg plaintiffs allege that significant privacy interests of Mrs. Grundberg will be compromised if the proposed intervenors' motions are granted. The Grundberg plaintiffs claimed in the hearing before this court that the facts of the personal life of Mrs. Grundberg permeate the record in this case and that she is entitled to "get on with her life" and not revisit the emotionally painful period of time each time any intervenor wants access to the discovery documents. In their brief in opposition to the Freeman and Public Citizen intervenors' motions, plaintiffs claim that granting the intervenors' proposed orders "would be unduly burdensome and oppressive, would result in the disclosure of confidential information which could cause plaintiffs annoyance and embarrassment, and would impose additional and unnecessary expenses upon plaintiffs." *Plaintiffs' Response to Motions to Intervene* ... [of Freeman and Public Citizen] dated September 12, 1991, pp. 6–7. The impracticability and great difficulty presented in redaction of documents in a case like this was noted by the Eighth Circuit in *Webster Groves School Dist. v. Pulitzer Publ. Co.,* 898 F.2d 1371 (8th Cir.1990). See n. 9, *infra.*

7. In its June 14, 1991 Memorandum Decision and Order, this court found that "certain executive summaries, technical reports, and statistical reports may contain a 'compilation of information' used in Upjohn's business which gives it certain competitive advantages over those who do not have the documents." *Grundberg v. Upjohn,* 137 F.R.D. 372, 394 (D.Utah 1991). The Tenth Circuit has said that documents which include clinical test data might be commercial in nature. *Anderson v. Dept. of Health and Human Services,* 907 F.2d 936, 944–45 (10th Cir.1990). *See also Public Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1290 (D.C.Cir.1983) (documentation of health and safety experience contained in application for marketing approval may be commercial information).

*There is No Right of Access by Non Parties to Pretrial Discovery Materials Whether Such are Retained by the Parties or Filed with the Court Under Seal*

■ Proposed intervenors claim a right of access to the discovery materials which were produced pursuant to the terms of the protective order, including those that were lodged or filed under seal with this court. The claims of right of access are variously asserted on the basis of the First Amendment, the common law and/or federal laws. In considering such claim, it is important to note that the documents in question were all subject to the protective order and were filed or lodged with the court under seal.[8] Such documents are not traditional public records which are publicly accessible.

*—No First Amendment Right of Access to Civil Discovery Documents and Materials*

■ As a general proposition, there is no public right of access to evidence obtained in the discovery process prior to use in public hearings or trials. The Supreme Court in *Seattle Times v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) said that a "litigant has no First Amendment right of access to information made available only for purposes of trying his suit" and that "pretrial depositions and interrogatories are not public components of a civil trial." *Id.* at 32–33, 104 S.Ct. at 2207. The *Seattle Times* court reasoned that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id.* at 33, 104 S.Ct. at 2208. Similarly, in *Webster Groves School Dist. v. Pulitzer Publ. Co.*, 898 F.2d 1371, 1377 (8th Cir.1990) the Eighth Circuit said: "The Supreme Court never has found a First Amendment right of access to civil proceedings or the court file in a civil proceeding."

*—Common Law Right of Access Does Not Extend to Civil Discovery Documents and Materials Filed Under Seal*

Courts have recognized that the public may have a right of access to court documents under the common law. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); *U.S. v. Hickey*, 767 F.2d 705, 708 (10th Cir.1985); *U.S. v. Eastern Air Lines, Inc.*, 923 F.2d 241, 245 (2nd Cir. 1991). In this regard, the Fourth Circuit recently stated that the "mere existence of a First Amendment right of access or of a common law right of access to a particular kind of document does not entitle the press and public to access in every case." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988). However, the "common-law right of access does not extend to information collected through discovery which is not a matter of public record." *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987). *See also U.S. v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989) (Common law "presumption [of access] should not apply to materials properly submitted to the court under seal").

The common law right is not absolute and the competing interests of the parties must be weighed carefully. *Hickey*, 767 F.2d at 708; *U.S. v. Rosenthal*, 763 F.2d 1291, 1294 (11th Cir.1985); *U.S. v. Webbe*, 791 F.2d 103, 106 (8th Cir.1986). In *U.S. v. Schlette*, 842 F.2d 1574, 1582 (9th Cir.1988), the Ninth Circuit held that the common law right of access is not given the same level of protection that is accorded to constitutional rights. *See also Valley Broadcasting Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1293 (9th Cir.1986).

■ Where non parties assert a common law right of access to court documents, courts use a balancing test to weigh the rights of litigants. Privacy rights may outweigh the public's interest in disclosure. *U.S. v. Smith*, 776 F.2d 1104, 1113 (3rd Cir.1985). *See also In re Knoxville News–Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir.1983) ("trial courts have always been afforded the power to seal their records when interests of privacy outweigh the public's right to know"); *De-*

---

**8.** In addition to such documents which were produced pursuant to the protective order, portions of deposition transcript and memoran-

dums which discussed the restricted documents and depositions were also lodged with the court under seal.

*partment of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (Supreme Court held that privacy interests outweighed disclosure of FBI rap sheets to a third party about private individuals). In *Webster Groves* the Eighth Circuit held that a handicapped student's privacy interest and the state's interest in protecting minors outweighed a newspaper publisher's interest in access to records of proceedings "[e]ven though judicial proceedings ... were completed" and the publisher's claimed interest was based on both First Amendment and common law right of access. *Webster Groves,* 898 F.2d at 1377 (8th Cir.1990).[9] The determination of whether the common law right of access to judicial records is outweighed by any countervailing factors is within the discretion of the trial judge. *Nixon v. Warner Communications, Inc.,* 435 U.S. at 599, 98 S.Ct. at 1312, 55 L.Ed.2d 570 (1978); *U.S. v. Guzzino,* 766 F.2d 302, 304 (7th Cir.1985); *see also Hickey,* 767 F.2d at 708.

*—Federal Law Does Not Require Public Access to Discovery Materials Which Were Filed Under Seal*

Public Citizen claims that documents which were filed with the court and released to the parties after dismissal must be refiled and made publicly accessible under Fed.R.Civ.P. Rule 5(d). Additionally, Public Citizen claims that federal court records are subject to the record retention and disposal requirements of the Federal Records Act, 44 U.S.C. §§ 2901–2909 and the Records Disposal Act, 44 U.S.C. §§ 3301–3324 and the requirements of 36 C.F.R. Parts 1220, 1222, 1228 (1990).

■ The court finds no duty on the court within Fed.R.Civ.P. Rule 5(d) to retain documents which have been submitted under

seal.[10] Indeed, the language of the second part of the rule states specifically that the court "may ... order that depositions upon oral examination and interrogatories, requests for documents, requests for admissions, and answers and responses thereto *not be filed unless on order of the court....*" *Id.* Emphasis added. Public Citizen relies upon *Public Citizen v. Liggett,* 858 F.2d 775 (1st Cir.1988), but in that case the First Circuit *vacated* the district court's order which required the parties to file documents with the court. *Id.* at 792. Also, in *Liggett* one of the parties was willing to provide access to the documents if the protective order were modified. Such is not the case here because both parties vigorously oppose any modification of the protective order. The First Circuit in *Liggett* held that under the facts of that case[11] "the court's power did not extend to postjudgment action." *Id.* at 781.

■ The federal laws cited by proposed intervenors cannot stand as the basis for a private right of action by non parties to compel refiling pre-trial discovery documents which were never made publicly accessible and filed with the court under seal. In this regard, the Supreme Court in *Kissinger v. Reporters Committee,* 445 U.S. 136, 148, 100 S.Ct. 960, 967, 63 L.Ed.2d 267 (1980), said

> Plaintiff requesters effectively seek to enforce these requirements of the Acts by seeking the return of the records to State Department custody. *No provision of either Act, however, expressly confers a right of action on private parties. Nor do we believe that such a private right of action can be implied.*

---

**9.** The *Webster* court also found that redaction of the file would be virtually impossible because it was "replete with documentation, evaluations, and other information regarding ... [the student's] learning disabilities and other personal information." 898 F.2d at 1377. A similar situation is presented here because Mrs. Grundberg claims significant privacy interests regarding her medical records and other personal information.

**10.** Fed.R.Civ.P. Rule 5(d) provides: "All papers after the complaint required to be served upon a

party shall be filed with the court either before service or within a reasonable time thereafter, but the court may on motion of a party or on its own initiative order that depositions upon oral examination and interrogatories, requests for documents, requests for admission, and answers and responses thereto not be filed unless on order of the court or for use in the proceeding."

**11.** Under the facts in *Liggett* the court had no control over the documents "long before Public Citizen filed its motion rendering any Rule 5(d) filing order meaningless." 858 F.2d at 781.

(Emphasis added.) [12]

*The Court Need Not Maintain Documents and Materials Which Have Never Been Public Documents Where a Case is Unconditionally Dismissed*

The Tenth Circuit has stated that the court has inherent supervisory powers over its own records and files. *Hickey,* 767 F.2d at 708.

■ There is no obligation on the court to maintain a repository of documents and items which may have been filed or lodged with the court under seal or otherwise, after the case in which such documents were filed or lodged has been dismissed pursuant to a voluntary and unconditional stipulation of all parties to the litigation in question. *See Wyeth Laboratories v. United States District Court for the District of Kansas,* 851 F.2d 321, 324 (10th Cir.1988). This is true even though the materials to be included in such a repository or "library" were documents lodged or filed with the court prior to trial, and therefore, within the court's possession and control. In this regard, the Tenth Circuit held in *Wyeth:*

> With these broad concepts in mind, we have attempted to determine whether the district court has the authority to create a facility for dissemination of information to private parties through the use of public facilities, public employees, and public funds. We could find no such jurisdiction, and neither the respondent nor the interested parties have supplied us with any. *We are thus constrained to hold in establishing the DTP Library, the district court acted without authority.*

*Id.* Emphasis added. Similarly, in *Littlejohn v. BIC Corp.,* 851 F.2d 673, 683 (3rd Cir.1988) the Third Circuit stated:

Neither the first amendment nor the common law right of access empowers the district court to require that litigants return such exhibits to the court for the purposes of copy and inspection by third parties.[13]

*The Strong Public Policy Encouraging Settlements Would be Largely Defeated by Permitting Wholesale Access to Discovery Documents by Non Parties*

■ This court previously has recognized that, absent overriding considerations, the historical tradition and policy of law is to encourage dispute resolution through settlements rather than litigation. *Society of Professional Journalists v. Briggs,* 675 F.Supp. 1308, 1310 n. 3 (D.Utah 1987). A chilling effect to the incentive to settle litigation would exist if non public materials in civil litigation which were subject to protective orders could be obtained by non parties over the opposition of both private parties after absolute and unconditional dismissal of litigation.

Many courts have recognized the public policy encouraging settlements. *Hess Oil Virgin Islands Corp. v. UOP, Inc.,* 861 F.2d 1197, 1209 (10th Cir.1988); *Bergh v. Dept. of Transportation,* 794 F.2d 1575, 1577 (Fed.Cir.1986). The Eleventh Circuit recently stated, "Settlement is generally favored because it conserves scarce judicial resources." *In re Smith,* 926 F.2d 1027, 1029 (11th Cir.1991). The Fifth Circuit has also stated that "public policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation." *Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1164 (5th Cir.1985). *See also Matter of Jackson Brewing Co.,* 624 F.2d 599, 604 (5th Cir.1980). The Second Circuit has stated that "courts favor the policy of encouraging voluntary settlement of dis-

---

**12.** The plaintiffs attempted to claim that FOIA contains the requisite congressional intent, but the court similarly rejected that argument:

> The plaintiff requesters contend that even though the Federal Records and Records Disposal Acts do not contemplate a private right of action, the FOIA nevertheless supplies what was missing from those Acts—congressional intent to permit private actions to recover records wrongfully removed from Govern-

ment custody. We are, however, unable to read the FOIA as supplying that congressional intent.

445 U.S. at 150, 100 S.Ct. at 968.

**13.** In that case the court ruled that trial exhibits were "properly subject to destruction by the clerk of court ... [and were] no longer judicial records within the "supervisory power" of the district court." 851 F.2d at 683.

putes." *ABKCO Music, Inc. v. Harri-songs Music, Ltd.,* 722 F.2d 988, 997 (2nd Cir.1983).

### Materials and Information Concerning the Safety and Health of Drugs are Accessible to the Public Apart from the Litigation Process

#### —Food and Drug Administration (FDA)

The Food and Drug Administration is administered through the Department of Health and Human Services. 21 U.S.C. § 393. As a general proposition, safety and effectiveness data in the possession of the FDA is publicly accessible on request. See 21 U.S.C. § 355(1) (1984 & Supp.1991). The Secretary of HHS, through the Commissioner of the FDA, is "responsible for executing ... research relating to foods, drugs, cosmetics, and devices...." 21 U.S.C. § 393(b)(2)(C). The FDA is responsible for investigating any problems associated with drugs currently on the market, including Halcion.

The protective order presently in place specifically provides:

> Upjohn may make available to the Food and Drug Administration (FDA) or any other governmental agency any documents or materials required by law or regulation to be reported to, or made available for inspection by, a governmental agency, and/or submitted to a governmental agency pursuant to said agency's specific request.

Protective Order dated October 4, 1989, p. 2, para. 3a. The FDA has always and continues to have independent power to request information regarding Halcion from The Upjohn Company. Public Citizen or other interested persons may petition the FDA to investigate claims regarding the alleged side effects of Halcion. Such a petition by Public Citizen to the FDA is presently pending. Self appointed parties who purport to be acting for "the public" but who are not litigants in any actions involving Halcion may be motivated by the ease of obtaining access to confidential and proprietary information which has been assembled at great cost by the parties to this litigation. The FDA, and not any proposed intervenor, has the responsibility to put into place regulations and to take action to assure public health and safety in the use of Halcion.

#### —Freedom of Information Act (FOIA)

The Tenth Circuit has stated that the basic policy of the Freedom of Information Act is in favor of disclosure to permit public access to information unnecessarily shielded from public view. *Johnson v. U.S. Dept. of Justice,* 739 F.2d 1514, 1516 (10th Cir.1984); *Alirez v. NLRB,* 676 F.2d 423, 425 (10th Cir.1982). FOIA requests should be broadly construed to effectuate that purpose, *Aviation Data Service v. F.A.A.,* 687 F.2d 1319, 1321 (10th Cir.1982), and unless the requested material in possession of a federal agency falls within one of the narrow statutory exemptions structured to protect specified confidentiality and privacy interests, the information must be made available on demand to any member of the general public. *See Anderson v. Dept. of Health and Human Services,* 907 F.2d 936, 941 (10th Cir.1990). One of the statutory exemptions to the FOIA is whether disclosure constitutes an unwarranted invasion of personal privacy. *Alirez,* 676 F.2d at 426. *See also* 5 U.S.C.A. § 552(b)(6, 7); *KTVY–TV v. U.S.,* 919 F.2d 1465, 1468 (10th Cir.1990).

### Courts May Not Enter Affirmative Discovery Orders Which Force Dissemination of Sealed Discovery Documents Where Both Parties in a Closed and Dismissed Case Oppose Dissemination

The Tenth Circuit in *Oklahoma Hospital v. Oklahoma Publishing Company,* 748 F.2d 1421, 1424, 1425 (10th Cir. 1985), set forth limits relative to access to documents covered by protective orders where both parties to the underlying litigation resist production of discovery materials.[14] The court in that case held that a non party who sought access to documents

---

14. *Cf. Public Citizen v. Liggett,* 858 F.2d 775 (1st Cir.1988) (where standing requirement was met because *one* of the parties was willing to give the documents to the third party seeking modification of the protective order if the protective order was lifted).

and discovery materials lacked standing to obtain that relief. The court said:

> While it may be conceded that parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order, *See Seattle Times Co. v. Rhinehart,* [467] U.S. [20], 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), *it does not follow that they can be compelled to disseminate such information....*
>
> Consequently, assuming we were to lift the protective orders, still the *parties to the underlying suit cannot be compelled, ipso facto, to disseminate documents in their possession; OPUBCO, a nonparty, can gain access to those documents only by exercising a party's right to disseminate.... Consequently, it is unlikely, that OPUBCO would succeed in obtaining the redress it seeks—access to the documents—were we to lift the protective orders. We therefore conclude that OPUBCO has failed to satisfy the second constitutional requirement for standing under Valley Forge.*

*Id.* at 1424–25. Emphasis added.

In addition, as previously observed, the Tenth Circuit has ruled that a district court has no authority to compel private parties to file discovery materials in order to create a facility for public dissemination of such materials. *Wyeth Laboratories v. United States Court for the District of Kansas,* 851 F.2d 321 (10th Cir.1988). *Smith v. Phillips,* 881 F.2d 902 (10th Cir. 1989); *United Nuclear v. Cranford Insurance Co.,* 905 F.2d 1424 (10th Cir.1990).

*Documents and Materials Which Are Discoverable Under Applicable Law in Other Jurisdictions May be Subject to Production Whether or Not a Protective Order is in Force and Effect in this Jurisdiction*

The Tenth Circuit has adopted the standard set forth by the Fifth Circuit in *Superior Oil Co. v. American Petrofina Co.,* 785 F.2d 130, 130 (5th Cir.1986), wherein the court said:

> *[Q]uestions of the discoverability in the [collateral] litigation of the materials discovered in [this] litigation are, of course, for the [collateral] courts.*

*United Nuclear,* 905 F.2d at 1428. Manifestly, limitations to discovery which may be imposed by courts in other jurisdictions are matters for determination by such courts, and the protective order of this court must not be used to subvert such orders. *Id.*

## IV. DETERMINATION OF MOTIONS OF PROPOSED INTERVENORS

The court now turns to consideration of the particular motions which have been presented by the proposed intervenors.

### Freeman

The essential relief sought by this proposed intervenor is to be free from any claim by Upjohn that the protective order in this case could prevent or impede discovery in the civil products liability action pending in a state court in Texas. Counsel for Upjohn in open court made assurances that no claim based upon the Supremacy Clause or other similar claim would be asserted that would prevent production of documents and access to sealed portions of depositions *solely because of the protective order entered here.*

Upjohn maintains that a stipulation entered between the parties in the Texas litigation concerning production of materials constitutes a restriction under Texas law relative to access to sealed portions of a particular deposition, as well as access to other documents. Counsel for Freeman disagrees, but both parties are in accord that interpretation of that document is strictly a matter for the Texas court.

It is apparent that discovery of whatever documents and materials are in the possession of Upjohn may go forward without regard to the protective order entered here, and that the Texas court may make and enter whatever discovery orders it may deem to be appropriate under Texas law, free from any restriction imposed under the protective order entered here. Accordingly, there is no need for granting intervention here to Freeman. This court may

not and will not enter any discovery order in collateral litigation in Texas, but it appears clear that the Texas court may enter whatever discovery orders it may see fit concerning discovery documents and items presented to the court here under seal, free from the protective order.

### Wacaser

This proposed intervenor faces a trial for alleged murder which is pending in a criminal court in Missouri. The relief sought is access to an expert witness, Dr. Ian Oswald, who by court order and apparently by reason of agreement voluntarily executed, is under restrictions relative to documents and materials covered by the protective order which were made available to him for review in this case.

There is no impediment because of this court's protective order to whatever discovery and production of documents the Missouri court or other courts of competent jurisdiction may permit or order. Also, as counsel for both parties agreed before this court, counsel for Wacaser certainly may confer with the expert witness who has already been contacted as a potential witness for the defendant in the criminal proceedings concerning his own research and any documents or materials the appropriate court may order produced. In this regard, it is clear that any documents or materials which are discovered or so produced may be referred to and opined upon by Dr. Oswald without regard to the protective order in this case, free from its restrictions.

Notwithstanding the foregoing, since the witness was employed by plaintiffs in this litigation, and given access to documents which were restricted under the protective order, he voluntarily signed a document in the nature of a confidentiality agreement in furtherance of the protective order restrictions. If the witness chooses to discuss or testify concerning documents obtained under the restrictions of the protective order, and despite the obligations of a contractual nature contained in the document which he executed, he will bear whatever risk of liability or sanction there may be by reason of such disclosures.

### Public Citizen

This proposed intervenor is not involved in litigation in any jurisdiction involving Upjohn or the drug Halcion. It is clear that the relief sought is to obtain an affirmative order of this court requiring Upjohn and plaintiffs to file with the clerk of this court the sealed documents and materials which had been lodged with the court and which by court order were released back to the custody of the parties after the case had been unconditionally dismissed. Then, this intervenor seeks an order which would dissolve the protective order so that access to the discovery materials can be obtained free from any restrictions, so they may be publicly disseminated.

Although possible relief may be available to Public Citizen in other forums or proceedings, this court holds that Public Citizen has no standing to obtain the relief it seeks in this case because the relief it seeks in this court is beyond the power and authority of this court to grant. Accordingly, it is apparent that granting permissive intervention in this case to Public Citizen would be pointless, because the accessibility and dissemination relief sought is not available in this court. Accordingly, Public Citizens' motion for permissive intervention and its other motions, should be denied.

## V. MODIFICATION OF THE PROTECTIVE ORDER IS WARRANTED

This court previously reviewed the discovery materials which were lodged with the court, and has entered an extensive Memorandum Decision and Order following a consolidated trial in which representative samples of the documents were examined regarding Grundberg's motion for removal of certain documents from confidentiality designation.[15] The court determined that "good cause" did not exist for the continuation of the protective order as to such documents after they are admitted in evidence or used at trial, and that Upjohn had failed to carry the burden of showing "good cause." The court recognized problems of possible prejudice to the jury be-

---

15. *Grundberg v. The Upjohn Company,* 137 F.R.D. 372 (D.Utah 1991).

cause of pre-trial publicity if documents and materials were released before trial, and that certain documents may contain trade secrets and confidential information requiring rulings as to admissibility and public access which could best be determined at the trial. Accordingly, the protective order was maintained in force and effect as to such discovery documents until such were admitted into evidence at trial or otherwise used at trial with the permission of the court.

The Protective Order in this case contemplates modification upon reconsideration by the court:

> This protective order is without prejudice to reconsideration by the court as discovery continues and may, upon a showing of need and good cause, be modified.

Protective Order of October 4, 1989 at 7, para. 11. Pretrial protective orders are usually appropriate only in the pretrial period. The First Circuit in *Liggett*, 858 F.2d 775, 790 (1st Cir.1988) found that the district court did not abuse its discretion when it found that "dismissal on the merits constituted a significant change in circumstances warranting modification of the protective order." Additionally, in circumstances similar to this case, the *Liggett* court said:

> [T]he protective order modified by the district court was a blanket protective order, that is, it was an order extending broad protection, to all documents produced by Liggett, without a showing of good cause for confidentiality as to any

individual documents. Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature over inclusive and are, therefore, *peculiarly subject to later modification.* Moreover, as the district court made clear in rejecting pretrial attempts to modify the protective order, the point of this protective order was to promote a fair trial, not to guarantee Liggett perpetual secrecy. *The dismissal of the case on the merits eliminated the possibility of trial and was, therefore, a significant change in circumstances calling into question the necessity of the protective order.*

858 F.2d at 790 (emphasis added).

 This court finds that circumstances have changed and that good cause does not exist to maintain and continue the present restrictions of the protective order. To the contrary, need and good cause exist to modify the order. The court has taken into account the considerations previously discussed which are particularly pertinent to modification of the protective order in this case. In balancing the possible injury and prejudice to the parties against benefits of modification of the order, the court determines that the balance weighs in favor of modification. However, the restrictions which were applicable to discovery materials[16] and made applicable to persons who signed confidentiality agreements and persons who voluntarily agreed to be subject thereto[17] are not ipso facto rendered inef-

---

16. The Supreme Court in *Seattle Times* said: [A]n order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny.... *[S]uch a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes.* 467 U.S. at 33–34, 104 S.Ct. at 2208. Emphasis added.

17. The documents to which access was allowed by experts who were hired by either of the parties in the underlying litigation, and others, were stamped with the following legend pursuant to the protective order:

CONFIDENTIAL. This document is subject to restriction by order of the United States District Court, District of Utah, Civil No. 89–C–274–W, and may not be copied or disseminated except by order of the court. There may be serious penalties for violation of the court's order with respect to this document. Protective Order at pp. 3–4, para. 4.

Also, experts and others to whom such restricted materials were made available received the materials subject to the following:

No person who examines any item produced pursuant to a discovery request and the information of which is protected by this protective order shall disseminate orally, or by any other means, any protected information other than as permitted by this order. Protective Order at p. 6, para. 8.

fectual by modification of the protective order. The legal effect of particular arrangements with experts and others may require future determination by courts of competent jurisdiction. In addition, the documents and materials now in the possession of Upjohn Company and/or plaintiffs should remain subject to discovery and production in other jurisdictions, free from the restrictions of this protective order. Those documents are to be maintained, as the parties acknowledge they will be, subject to directives by the FDA and discovery orders by courts of competent jurisdiction. Substantial harm could occur by the wholesale rendition of immediate public access to the documents in this case, and courts which require production may well determine to impose the same restrictions as were imposed by this court, pending public hearings. This court, of course, does not direct any other court or body as to such matters, since those determinations must be made under discovery rules and other considerations applicable in the jurisdiction in question.

Based upon the foregoing, and in furtherance of its June 14, 1991 Memorandum Decision and Order, on the court's own motion and *sua sponte*, it is hereby

ORDERED, that all documents and materials covered by the protective order are to be maintained by the parties subject to discovery orders of any court of competent jurisdiction, and/or the FDA, free from the restrictions of the protective order. Questions as to discoverability, confidentiality and public accessibility or use of the documents should be determined by the court of competent jurisdiction which may order production of such documents and materials; it is

FURTHER ORDERED, that since restrictions imposed by the protective order against dissemination and disclosure of documents and materials produced in this case in pre-trial discovery may continue to apply to persons who have executed a confidentiality agreement or to persons who may have gained access to or received copies of discovery documents or items which were subject to the protective order, such restrictions shall remain in effect until a determination of the legal effect of such contractual arrangements is made by a court of competent jurisdiction; it is

FURTHER ORDERED, that except as set forth above, the confidentiality designation is removed from all documents and discovery materials; it is

FURTHER ORDERED, that the Motion to Intervene and other motions by William R. Freeman are DENIED, except to the extent that the protective order shall not be used to impede or prevent discovery of documents, deposition transcripts and other materials by the Texas court free from the terms of the protective order; it is

FURTHER ORDERED, that the Motion of Nila Wacaser for Leave to Intervene and her other motions, are DENIED, except that nothing in the protective order or this order shall prohibit an expert from testifying in litigation involving Halcion or the Upjohn Company with reference to documents and materials which may be ordered to be produced in that collateral litigation by order of a court of competent jurisdiction, free from the terms of the protective order herein; it is

FURTHER ORDERED, that Public Citizen's Motion to Intervene, and its other motions, are DENIED.

IT IS SO ORDERED.