**Michael R. MARTIN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 01–3189.

United States District Court, C.D. Illinois, Springfield Division.

Dec. 12, 2001.

Allan A. Ackerman, Chicago, IL, for Plaintiff.

Michael Martin (pro se), Florence, CO.

Patrick J. Chesley, Office of U.S. Attorney, Springfield, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

MSI and Michael R. Martin.

The final chapter.

### I. BACKGROUND [1]

On August 16, 1997, a jury found Petitioner guilty of sixteen counts of mail fraud (18 U.S.C. § 1341) and guilty of one count of bribery (18 U.S.C. § 666(a)(1)(B)). On June 22, 1998, the Court sentenced Petitioner to 70 months of imprisonment and ordered him to pay restitution, along with his co-Defendant, in the amount of $12,300,00.00 to the Illinois Department of Public Aid. On appeal, the United States Court of Appeals for the Seventh Circuit affirmed Petitioner's convictions but reversed Petitioner's sentence regarding the amount of restitution imposed. *United States v. Martin*, 195 F.3d 961 (7th Cir. 1999), *cert. denied* 530 U.S. 1263, 120 S.Ct. 2721, 147 L.Ed.2d 986 (2000). Accordingly, the Seventh Circuit remanded the matter back to this Court to re-calculate the amount of restitution owed by Petitioner. *Id.* at 970.

After considering the Seventh Circuit's opinion and the arguments of the parties, the Court ordered Petitioner to pay restitution in the amount of $171,768.01. *United States v. Martin*, 109 F.Supp.2d 970 (C.D.Ill.2000). Thereafter, the Government, Petitioner, and Petitioner's co-De-

---

1. For a complete history of Defendant's case, including all related cases, *see United States v. Martin*, 195 F.3d 961 (7th Cir.1999); *United States v. Ladd*, 218 F.3d 701 (7th Cir.2000); *In re Associated Press*, 162 F.3d 503 (7th Cir. 1998); *United States v. Martin*, 974 F.Supp. 677 (C.D.Ill.1997); *United States v. Martin*, 38 F.Supp.2d 698 (C.D.Ill.1999); *United States v. Martin*, 109 F.Supp.2d 970 (C.D.Ill.2000); *United States v. Berger*, 990 F.Supp. 1051 (C.D.Ill.1997); and *United States v. Berger*, 990 F.Supp. 1054 (C.D.Ill.1998).

fendant filed timely notices of appeal. However, on January 12, 2001, the Seventh Circuit dismissed the parties' appeals pursuant to their requests and pursuant to Federal Rule of Appellate Procedure 42(b).

## II. PETITIONER'S CLAIMS

Petitioner has now filed the instant petition pursuant to 28 U.S.C. § 2255 asking the Court to vacate, set aside, or correct his sentence. Therein, Petitioner asserts that his due process rights were violated during his sentencing hearing. Specifically, Petitioner argues that his incarceration is constitutionally infirm because his imprisonment was, and continues to be, based upon an incorrect determination of the amount of loss at issue in this case, *i.e.*, an amount of loss which was tied to the amount of restitution originally imposed but later substantially reduced by the Court upon remand.

Petitioner contends that there is a correlation between the amount of loss for purposes of calculating a defendant's adjusted offense level under U.S.S.G. § 2F1.1 and the amount of restitution imposed pursuant to the Mandatory Victims Restitution Act. 18 U.S.C. § 3663A. Because the Court substantially reduced the amount of restitution owed by him, Petitioner claims that the Court should equally reduce the amount of loss attributable to him which, in turn, would reduce his adjusted offense level by eight levels, making his applicable sentencing guideline range 30–37 months rather than the 70–87 months as previously found by the Court. To do otherwise, Petitioner argues, would deny him his due process right to be sentenced upon reliable information, would be fundamentally unfair, and would constitute a miscarriage of justice.

## III. GOVERNMENT'S ANSWER

The Government argues that Petitioner's petition should be denied for three reasons. *First*, the Government asserts that this issue has been previously decided by the Seventh Circuit and by this Court against Petitioner. Thus, the Government contends that the Court should reject Petitioner's claim because there are no changed circumstances which would require the Court to revisit this issue and because the law of the case doctrine dictates that result.

*Second*, the Government argues that the Court should deny Petitioner' § 2255 petition because he has failed to establish cause for his failure to raise the issue at the appropriate time on direct appeal. *Third*, the Government claims that Petitioner has failed to establish prejudice. Accordingly, the Government asks the Court to deny Petitioner's § 2255 petition.

## IV. ANALYSIS

Upon review of the pleadings and all of the exhibits, the Court concludes that an evidentiary hearing is not required. Accordingly, pursuant to Rule 8 of the Rules Governing § 2255 cases, the Court will dispose of this petition based solely on the parties' submissions.

 The Seventh Circuit has explained that "once this court [the Seventh Circuit] has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a district judge asked to decide the same issue in a later phase of the same case, unless there is some good reason for re-examining it." *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986); *see Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)(holding that "the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). "The doctrine, however, allows some flexibility, permitting a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim."

*United States v. Thomas,* 11 F.3d 732, 736 (7th Cir.1993). "It [the law of the case doctrine] will not be enforced where doing so would produce an injustice." *Mazak,* 789 F.2d at 581.

■ In the instant case, the Court finds no good reason to re-examine the amount of loss calculation. On direct appeal, the Seventh Circuit affirmed this Court's determination that the amount of loss to the Illinois Department of Public Aid as a result of Petitioner's illegal conduct was $12,300,00.00:

> Audits conducted after the government began investigating the defendants revealed thousands of invalid identifications; the amended contract had cost the Department an additional $12.9 million over the original contract price, causing a net loss to the Department of $12.3 million after offsetting $600,000 that it owed Martin's company for legitimate services.

> \*　　\*　　\*　　\*　　\*　　\*

> The $12.3 million loss that the amended contract was found to have caused the Department of Public Aid was a loss intended by Martin and Lowder within the meaning of the sentencing guidelines and was therefore the appropriate amount for the judge to consider in deciding what prison sentence and fine to impose on each of them.

*Martin,* 195 F.3d at 965, 967–68. Thus, both this Court and the Seventh Circuit have found that the amount of loss to the Illinois Department of Public Aid was $12,300,000.00 within the meaning of U.S.S.G. § 2F1.1.

Other than this Court's re-calculation of the amount of restitution owed by him, Petitioner has not cited any intervening change in the law since the Court determined the amount of loss at sentencing. Likewise, Petitioner has not tendered any new evidence with which to convince the Court that it committed error in calculating the amount of loss at sentencing. Nor has Petitioner pointed the Court to any special circumstances which warrant re-examining the amount of loss.

Furthermore, contrary to Petitioner's "primary hypothesis" "an amount-of-loss calculation for purposes of sentencing does not always equal such a calculation for restitution. For example, Application Note 7 to § 2F1.1 of the Sentencing Guidelines allows for a loss calculation based on 'intended loss,' whereas 18 U.S.C. § 3663(a)(1)(A) requires a showing of actual loss for purposes of restitution." *United States v. Germosen,* 139 F.3d 120, 130 (2d Cir.1998); *see also United States v. Carboni,* 204 F.3d 39, 47 (2d Cir.2000)(noting that courts "must separately analyze loss with respect to the restitution order because a court's power to order restitution is limited to actual loss."); *but see United States v. Izydore,* 167 F.3d 213, 222 n. 5 (5th Cir.1999)(noting that "[w]e would ordinarily expect that the restitution obligation and the amount of loss would be nearly the same."). The Seventh Circuit recognized this point on direct appeal when that court explained that the amount of loss determination takes into account both intended and actual loss while restitution requires "the existence of a causal connection between the defendant's conduct and the loss...." *Martin,* 195 F.3d at 968.

Thus, the Court finds no incongruity between the amount of loss as found by the Court and the amount of restitution imposed by it in this case. It is also important to note that the Seventh Circuit reversed and remanded this case for a re-calculation of the proper amount of restitution while affirming the Court's determination of the amount of loss. This action by the Seventh Circuit weighs against Petitioner's primary hypothesis because that court recognized-at least inferentially—

that the amount of loss and the amount of restitution imposed may not be identical in this case.

In short, nothing has changed since sentencing. The Government proved by a preponderance of the evidence that Petitioner's criminal conduct (along with his co-Defendants') caused a loss, both actual and intended, to the Illinois Department of Public Aid in the amount of $12,300,000.00. The Government also proved by a preponderance of the evidence a causal relationship between Petitioner's conduct and the loss to the Illinois Department of Public Aid which the Mandatory Victims Restitution Act requires him to restore in the amount of $171,768.01. *Martin,* 109 F.Supp.2d at 975. Such is still the case today. Therefore, because the Court has correctly determined the amount of loss (and the Seventh Circuit has affirmed this finding) in this case, the Court cannot say that it would work a manifest injustice nor would it be a fundamental miscarriage of justice to allow Petitioner's convictions and sentence to stand. *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Finally, Petitioner has raised two additional claims in his reply brief. Initially, the Court notes that new claims and arguments are not allowed to be raised in reply briefs. *See* CDIL–LR 7.1(D)(3)(providing that replies to responses to summary judgment motions are limited to matters raised in the response); *see also United States v. Elizalde–Adame,* 262 F.3d 637, 640 (7th Cir.2001)(noting that arguments raised by criminal defendant for first time in reply brief will ordinarily not be considered on appeal). Nevertheless, because neither of Petitioner's claims have merit, the Court will address them briefly.

*First,* Petitioner asserts that he "can (and if necessary-will) contend that his sentencing attorney ... was ineffective for not pursuing the district court's denial of the issue herein presented." The Court is not sure when, if not now, Petitioner intends to raise his ineffective assistance claim. In any event, Petitioner's former counsel objected to the amount of loss determination (as stated in the Presentence Investigation Report and found to be correct by the Court) both at the sentencing hearing and on direct appeal. Therefore, Petitioner's former counsel cannot be said to have been ineffective for failing to raise an issue which he did, in fact, raise.

■ *Second,* Petitioner contends that he should receive a three level downward departure in his adjusted offense level pursuant to application note 3 to U.S.S.G. § 2X1.1 which is made reference to in note 7 to U.S.S.G. § 2F1.1. However, that guideline provision is inapposite in the instant case. U.S.S.G. § 2X1.1(b) provides: "If an attempt, decrease by 3 levels, *unless* the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense ...." (emphasis added). Here, Petitioner completed all of the acts necessary for the successful completion of the offense of mail fraud. Therefore, Petitioner is not entitled to a three level downward departure in his adjusted offense level.

*Ergo,* Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (d/e 1) is DENIED.